Nancy Kay Layne
Plaintiff, Pro Se
2670 Broadway Ave # b 191
North Bend, OR 97459
(541) 435-0054

FILED 04 SEP '25 13:35 USDC-ORP

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**NANCY KAY LAYNE**

Plaintiff(s),

v.

**ZBS LAW, LLC;  KLINEDINST PC;
THE BANK OF NEW YORK, AS
TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE
CWMBS INC., CHL MORTGAGE PASS-
THROUGH TRUST 2006-HYB4,
MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-HYB4;
SHELLPOINT MORTGAGE
SERVICING;  AND DOES 1–10,**

Defendant(s).

Case No.: _3:25-CV-1584-SI_

**COMPLAINT FOR DECLARATORY,
INJUNCTIVE, AND MONETARY
RELIEF**

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

1. Plaintiff brings this action to redress constitutional and statutory violations arising from

   Defendants' unlawful attempts to foreclose upon Plaintiff's property.

2. Plaintiff's loan went into **default on June 08, 2015**. Any entity acting thereafter to

   collect or enforce the loan qualifies as a **"debt collector"** under the FDCPA.

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**       **Page 1 of 7**

#113414

3. Defendants pursued foreclosure without standing, based on void post-closing assignments, and beyond the six-year statute of limitations in **ORS 12.080**.

4. Despite Plaintiff's filings in state court on August 1, 2025 — which raised the statute of limitations, the absence of the original note, and other fatal defects — the state court entered judgment and later denied relief. This deprived Plaintiff of property without due process of law.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under **28 U.S.C. § 1331** (federal question), **28 U.S.C. § 1343(a)(3)** (civil rights), and **15 U.S.C. § 1692k(d)** (FDCPA).

6. Venue is proper under **28 U.S.C. § 1391(b)** because the subject property is located in Washington County, Oregon and the events occurred there.

7. Declaratory and injunctive relief is authorized under **28 U.S.C. § 2201–2202** and **Fed. R. Civ. P. 65**.

## III. PARTIES

8. Plaintiff **Nancy Kay Layne** is an individual residing in Coos County, Oregon, and owner of the property at **2186 East Main Street, Hillsboro, OR 97123**.

7. Defendant **ZBS Law, LLC** initiated the foreclosure in state court, is an Oregon foreclosure law firm with offices at 5 Centerpointe Dr., Suite 400, Lake Oswego, Oregon 97035.

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**          **Page 2 of 7**

9.  Defendant **Klinedinst PC** later replaced ZBS LAW, LLC as to represent BONYM in the foreclosure proceedings.

10. Defendant **The Bank of New York Mellon** ("BONYM") is named as trustee of the securitized trust but admitted in writing it does not own Plaintiff's loan or property.

11. Defendant **Shellpoint Mortgage Servicing** acted as a loan servicer and attempted collection after default.

12. Defendants **Does 1–10** are unknown entities or individuals involved in the creation, assignment, or enforcement of void instruments.

## IV. FACTUAL BACKGROUND

13. On April 14, 2006, Sierra Pacific Mortgage issued a written letter confirming that the servicing of Plaintiff's loan was transferred to Countrywide Home Loans, Inc. (Exhibit G, attached hereto and incorporated by reference). Despite this transfer, no recorded assignment into or out of Countrywide exists in the Washington County Recorder's Office, leaving a fatal break in the chain of title."

14. The **CWMBS Inc., CHL Mortgage Pass-Through Trust 2006-HYB4** closed in **May 2006** (Exhibit E). Plaintiff's loan was not transferred into the Trust before that date.

15. All recorded assignments occurred years after May 2006, making them void (Exhibit C).

16. Plaintiff's loan went into **default on June 08, 2015**. All subsequent collectors, including Shellpoint and BONYM, qualify as "debt collectors" under the FDCPA.

17. On **June 8, 2015,** the loan was accelerated. Foreclosure was not filed until **June 12, 2023**, more than eight years later, exceeding the six-year limit in ORS 12.080.

18. On **November 26, 2024**, BONYM admitted via email it "does not own the loan or the property" (Exhibit F).

19. The **MERS® Rules of Membership (2025 & 2013)** confirm that MERS is not a mechanism for creating or transferring interests in mortgage loans (Exhibit A).

20. Defendants relied on fraudulent and robo-signed assignments.

21. Plaintiff filed in state court on **August 1, 2025**:  A Motion to Vacate Judgment, Memorandum of Law, and Request for Mandatory Judicial Notice citing **ORS 12.080** (limitations), **UTCR 2.060** (original note requirement), and **ORS 73.0309** (enforcement of lost instruments).  Exhibits showing assignments post-closing, robo-signing, and BONYM's admission.

22. The state court ignored Plaintiff's filings and denied relief, despite controlling precedent (**Deutsche Bank v. Abel; U.S. Bank v. McCoy**) and mandatory statutory law.

23. The denial, combined with entry of judgment despite no original note or standing, constitutes deprivation of property without due process of law.

## V. CLAIMS FOR RELIEF

**Count I – FDCPA (15 U.S.C. § 1692e, f)**

25. Defendants Shellpoint and BONYM acted as debt collectors because Plaintiff's loan was in default as of **June 08, 2015**.

26. Defendants misrepresented their authority to collect, attempted foreclosure without standing, and relied on void documents.

**Count II – Civil Rights (42 U.S.C. § 1983)**

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**          **Page 4 of 7**

27. Defendants, by invoking Oregon's judicial foreclosure process and securing judgment despite lack of standing, acted under color of state law to deprive Plaintiff of property without due process.

28. The state court's refusal to apply ORS 12.080, UTCR 2.060, and ORS 73.0309 — despite Plaintiff's properly filed Mandatory Judicial Notice — demonstrates denial of due process.

**Count III – Declaratory Relief (28 U.S.C. § 2201)**

29. Plaintiff seeks declaration that all foreclosure-related instruments are void and Defendants lack standing.

**Count IV – Injunctive Relief (FRCP 65)**

30. Plaintiff seeks to enjoin Defendants from any foreclosure activity, recording void instruments, or collection based on fraudulent assignments.

**Count V – Wrongful Foreclosure / Abuse of Process**

31. Defendants initiated foreclosure after expiration of the statutory period and without possession of the original note, constituting wrongful foreclosure and abuse of judicial process.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, and prays for:

**Equitable and Declaratory Relief**

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**      **Page 5 of 7**

1. A declaration that all assignments and foreclosure documents recorded after May 2006 are void.

2. An injunction restraining Defendants from foreclosing on the property at **2186 East Main Street, Hillsboro, Oregon 97123.**

3. Cancellation and expungement of void instruments from the Washington County land records.

4. A declaration that Defendants lack standing to enforce the note or deed of trust.

**Monetary Relief**

5. Compensatory damages of not less than **$150,000**, including financial losses, emotional distress, and reputational harm.

6. Statutory damages as provided by law (FDCPA, RESPA, TILA).

7. Punitive damages of not less than **$500,000** to punish and deter Defendants' willful misconduct.

8. Attorney's fees and costs as authorized by 42 U.S.C. § 1988 and 15 U.S.C. § 1692k.

9. Any further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right under Fed. R. Civ. P. 38 and 39.

**Respectfully submitted,**

Dated: 27 AUGUST 2025

Nancy Kay Layne
Plaintiff, Pro Se
2670 Broadway Ave #B191
North Bend, OR 97459
(541) 435-0054

## TABLE OF AUTHORITIES

**Statutes and Court Rules**

- **28 U.S.C. § 1331** – Federal Question Jurisdiction

- **28 U.S.C. § 1343(a)(3)** – Civil Rights Jurisdiction

- **28 U.S.C. § 2201–2202** – Declaratory Judgment Act

- **42 U.S.C. § 1983** – Civil Rights Claim for Deprivation of Rights under Color of State Law

- **15 U.S.C. § 1692e, f (FDCPA)** – Prohibitions on False Representations and Unfair Practices

- **15 U.S.C. § 1641 (TILA)** – Disclosure of Assignment of Mortgage Loans

- **12 U.S.C. § 2605 (RESPA)** – Servicer Duties to Respond to Borrower Inquiries

- **ORS 12.080(1)** – Six-Year Statute of Limitations for Mortgage Foreclosure Actions

- **ORS 73.0309** – Enforcement of Lost, Destroyed, or Stolen Instruments

- **UTCR 2.060** – Requirement of Producing Original Note in Foreclosure Actions

**Cases**

- *Carpenter v. Longan*, 83 U.S. 271 (1872) – The note and mortgage are inseparable; mortgage unenforceable without the note.

- *Kalb v. Feuerstein*, 308 U.S. 433 (1940) – Void judgments entered without jurisdiction are subject to collateral attack.

- *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) – Standard for preliminary injunctions.

- *Elrod v. Burns*, 427 U.S. 347 (1976) – Loss of constitutional rights constitutes irreparable harm per se.

- *Jerman v. Carlisle*, 559 U.S. 573 (2010) – FDCPA violations are strict liability; mistaken interpretation of law not a defense.

- *Deutsche Bank Nat'l Trust Co. v. Abel*, 262 Or App 473 (2014) – Six-year limitations period for foreclosure; action barred if untimely.

- *U.S. Bank Nat'l Ass'n v. McCoy*, 290 Or App 525 (2018) – Acceleration triggers the six-year statute of limitations for foreclosure.

## TABLE OF EXHIBITS

- **Exhibit A** – Excerpt from MERS® System Rules of Membership (June 30, 2025) and (March 18, 2013) confirming MERS is not a mechanism for creating or transferring ownership interests in mortgage loans.
- **Exhibit B** – Investigative Report documenting systemic robo-signing, fraudulent foreclosure practices, and irregularities in mortgage assignments affecting Plaintiff's loan.
- **Exhibit C** – Certified Washington County, Oregon land records showing assignments executed and recorded years after the Trust closing, including documents bearing signatures of known robo-signers.
- **Exhibit D** – Affidavit of Fact in Support of Defendant's Notice and Declaration of Void Judgment, demonstrating that the foreclosure judgment is void for lack of standing.(May 31, 2024)
- **Exhibit E** – Pooling and Servicing Agreement (PSA) excerpts for the CWMBS Inc., CHL Mortgage Pass-Through Trust 2006-HYB4, establishing that the Trust closed in May 2006.
- **Exhibit F** – Email from BONYM "MBS Property Inquiries" (November 26, 2024) admitting that BONYM acts only as trustee and does not own the loan or property.
- **Exhibit G** – Sierra Pacific Mortgage Letter (April 14, 2006) transferring servicing to Countrywide Home Loans, Inc., with no recorded assignment into or out of Countrywide in county land records, evidencing a fatal gap in the chain of title.
- **Exhibit H** – Deposition Testimony of Michele Sjolander, former Countrywide executive, admitting widespread robo-signing and surrogate signers, confirming unreliability of foreclosure documents.
- **Exhibit I** – Plaintiff's August 1, 2025 Motion to Vacate Judgment filed in Washington County Circuit Court, raising statute of limitations, lack of standing, and absence of original note.
- **Exhibit J** – Plaintiff's August 1, 2025 Memorandum of Law and Request for Mandatory Judicial Notice filed in Washington County Circuit Court, citing ORS 12.080, UTCR 2.060, ORS 73.0309, and controlling precedent (*Abel* and *McCoy*).
- **Exhibit K** – State Court's Order Denying Plaintiff's Motions, despite Defendants' lack of standing, expired statute of limitations, and failure to produce the original note, evidencing deprivation of due process.

# Exhibit A

Excerpt from MERS® System Rules of Membership (June 30, 2025) – Rule 2, Section 8



# MERS® System Rules of Membership

Effective Date: June 30, 2025

© 2025 MERSCORP Holdings, Inc. All rights reserved.

MORTGAGE
TECHNOLOGY

 **MERS**

shown in the MERS® System Pricing Schedule (as defined in Rule 5, Section 1(a)). If the MERS Entities receive a request from a third party to release a lien for a loan that either (1) is not registered on the MERS® System or (2) is registered on the MERS® System to an inactive Member as Servicer, Subservicer, or Investor, the MERS Entities shall take reasonable steps to determine if the loan has been paid in full. If the MERS Entities determine that the loan has been paid in full, or are unable to determine whether or not the loan has been paid in full after taking such reasonable steps, MERS may release the lien for such loan.

*Section 8.* The MERS Entities and the Member agree that: (1) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (2) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System. Actual transfers of liens to or from MERS in the mortgage loans are reflected in the public land records as described in this Rule.



# MERS® System Rules of Membership

Effective date: March 18, 2013

pay an administrative fee as shown in the MERS® System Pricing Schedule (as defined in Rule 5, Section 1(a)).

*Section 7.*  The Companies and the Member agree that: (i) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (ii) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System.

9

# Exhibit B

Investigative Report by William J. Paatalo (July 22, 2025)



Forensic "Securitization" Auditing, Chain of Title Analysis, Legal Support Services, Bonded & Insured

Old 1-888-582-0961

New 1-406-309-1812

- Home
- About William Paatalo
- Services
- FAQs
- Abstract & Legal Reseources
- Contact Us



# Bombshell MERS Admission Collapses 15+ Years of Foreclosure Authority

Posted by admin on Jul 22, 2025 in Uncategorized | 0 comments

**DISCLAIMER:** The following article is for informational and investigative purposes only. It is not intended to be—and should not be construed as—legal advice. Readers are strongly encouraged to consult with qualified legal counsel to evaluate how this information may apply to their specific circumstances.

**By William J. Paatalo – Private Investigator / Expert Witness – July 22, 2025**

A stunning new admission from MERSCORP Holdings—the company behind the Mortgage Electronic Registration Systems (MERS)—has just shattered the legal foundation of millions of mortgage assignments, securitized trusts, and foreclosure claims dating back more than a decade.

> **"(1) The MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (2) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System. Actual transfers of liens to or from MERS in the mortgage loans are reflected in the public land records as described in this Rule."**
> — *MERS Membership Manual, Section 2.8 (2025 Edition)(See: MERS System Rules of Membership)*

This is not a policy revision. It is a declaration of fact. A retroactive disclaimer. A bombshell.

For years, MERS has acted as the so-called "nominee" for lenders, assigning mortgages to servicers and

trusts without ever holding the un   ying note or lien. Now, MERS has      itted that it never had legal authority to effectuate lien transfe    meaning any assignment recorded ... is name was void from the outset.

## What Changed? The 2024 Auditor Red Flags

It's worth pausing to examine a subtle but important twist in the language of Section 2.8. After stating unequivocally that the MERS System is not a mechanism for creating or transferring liens or interests, MERS adds: *"Actual transfers of liens to or from MERS in the mortgage loans are reflected in the public land records as described in this Rule."* This phrasing appears to be a legal hedge—an attempt to preserve the idea that if any transfer did occur involving MERS, it had to have been done through traditional means, like public land record filings. But this is circular reasoning: if MERS is not a valid mechanism for transferring liens, then even a recorded assignment by MERS would be void if MERS lacked any actual interest in the loan. The fallback to land records doesn't save these assignments—it only further proves that MERS should never have executed them in the first place.

While MERS has operated for over two decades with impunity, signs of a reckoning began to emerge in 2024.

A third-party quality assurance report conducted by MetaSource (as documented in the **2024 MERS QA Findings Report – See: [Report-MERSQAFindings-2024](#)**) exposed systemic noncompliance among MERS Members. The findings included:

- Widespread failure to reconcile MERS system data with public land records.
- Inadequate or nonexistent quality assurance processes.
- Noncompliant documentation that violated state-specific laws.

Perhaps most damning was the revelation that many MERS Members submitted defective assignment samples that misidentified MERS as a nominee or failed to follow the MERS eQA Plan. These revelations likely put MERSCORP in legal jeopardy—forcing a reassessment of its historical role. Thus, the 2025 language in Section 2.8 of the MERS Membership Manual appears not only as an admission—but as a legal self-preservation move.

Importantly, these recent developments confirm what many of us in the investigative and legal communities have argued for over a decade. As referenced in my published abstract, *"How Your Mortgage Became a Wall Street Security Without Your Knowledge,"* the foundational flaw in the MERS system was always its inability to lawfully transfer the note or lien. And in sworn testimony such as that given by **A.J. Loll**, who represented MERS in prior litigation, these points were already conceded under oath. Loll acknowledged that MERS does not hold or possess promissory notes, and that MERS assignments do not transfer the debt obligation.

We knew this all along. The difference now is that MERS is finally admitting it—publicly and institutionally.

## Legal Fallout: The Chain of Title Disintegrates

If MERS assignments were never valid, then every securitization, foreclosure, or transfer based on those assignments is built on a collapsed chain of title.

- Assignments that claim to transfer both the mortgage and note—but show no evidence of possession or negotiation—are now legally meaningless.
- Entities that relied on MERS to transfer their interest cannot demonstrate lawful acquisition through traditional means.
- Even when boilerplate language claims to transfer the "mortgage together with the note," it is hollow if

MERS never held the debt    ument.

Millions of property titles are now clouded. Thousands of foreclosure judgments, bankruptcies, and trustee sales are subject to challenge.

## Title Insurers and Courts Must Heed This

Title insurers who continue to underwrite policies on MERS-assigned properties are now on notice. So are courts who adjudicate based on faulty assignments. No judicial order, bankruptcy plan, or settlement can override the foundational defect: If the lien was never validly transferred, then the party asserting rights under that lien has **no standing.**

---

### What This Means for Homeowners and Litigants

If you:

- Had a mortgage assigned by MERS,
- Are facing foreclosure from a securitized trust,
- Were told a trust is the "holder" of your note based on a MERS assignment,

…you now have powerful new evidence to challenge the legitimacy of that claim. The law is clear: **The mortgage follows the note.** And MERS—by its own admission—never held the note and never had the authority to transfer the lien. This isn't just a revelation. It's a revolution in mortgage litigation. Every attorney, judge, borrower, investor, and title agent must understand the implications of this admission. The house of cards built on fraudulent MERS assignments is finally collapsing under the weight of its own creator's confession.

If you need help analyzing a MERS-based chain of title, preparing an expert affidavit, or challenging a fraudulent assignment, contact:

**William J. Paatalo**
Investigator / Expert Witness
BP Investigative Agency, LLC

 406-309-1812

✉ bill.bpia@gmail.com

Your title, your rights, and your property depend on knowing the truth—and now the truth is in writing.

---

## Leave a Reply

Your email address will not be published. Required fields are marked *

# Exhibit C

Certified Washington County Land Records (Assignments, robo-signed documents)

Until a change is requested all tax statements
shall be sent to the following address:
*2186 EAST MAIN STREET,*
*HILLSBORO, OR 97123*

When Recorded Mail To:
*MIP INSURING DEPARTMENT*
*SIERRA PACIFIC MORTGAGE COMPANY, INC.*
*50 IRON POINT CIRCLE, STE 200*
*FOLSOM, CA   95630*
*916-932-1700*

Washington County, Oregon **2006-030001**
03/15/2006 03:16:15 PM
D-M          Cnt=1  Stn=10  A DUYCK
$105.00 $6.00 $11.00 - Total = $122.00

0092354720060030001021 0213

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.   Jerry Hanson

Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

Recorded By
First American Title Insurance Company of Oregon
No. _____

[Space Above This Line For Recording Data]

Loan No:      *0000353951*
Parcel ID No:  *R0717371*

# DEED OF TRUST

MIN:   *1000703-0000353951-4*

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   *MARCH 8, 2006*
together with all Riders to this document.
(B) "Borrower" is   *LINTON CECIL LAYNE and NANCY KAY LAYNE*

Borrower is the trustor under this Security Instrument.
(C) "Lender" is   *SIERRA PACIFIC MORTGAGE COMPANY, INC.*

Lender is a   *CORPORATION*   organized and existing under the laws of   *CALIFORNIA*
Lender's address is      *50 IRON POINT CIRCLE, STE 200, FOLSOM, CA   95630*

(D) "Trustee" is    *FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.1.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
*(page 1 of 14 pages)*

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated     MARCH 8, 2006     .
The Note states that Borrower owes Lender
   ONE HUNDRED FORTY THOUSAND EIGHT HUNDRED and NO/100-----     Dollars
(U.S. $     140,800.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     APRIL 1, 2036     .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [ xx Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |
| [ ] V. A. Rider | | INTEREST ONLY RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Loan No:  0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS     Form 3038 1/01
DRAW.MERS.OR.CVL.DT.2.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)     (page 2 of 14 pages)

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of  *WASHINGTON*                          :
*LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A."*

which currently has the address of   *2186 EAST MAIN STREET*                    [Street],
*HILLSBORO*                    [City], Oregon    *97123*    [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is

*Loan No: 0000353951*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3038 1/01
DRAW.MERS.OR.CVL.DT.3.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                    *(page 3 of 14 pages)*

not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

*Loan No: 0000353951*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS          Form 3038 1/01
DRAW.MERS.OR.CVL.DT.4.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)                    *(page 4 of 14 pages)*

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts

Loan No: 0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.5.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
*(page 5 of 14 pages)*

disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Loan No: 0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS    Form 3038 1/01
DRAW.MERS.OR.CVL.DT.6.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)    (page 6 of 14 pages)

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Loan No: 0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.7.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
(page 7 of 14 pages)

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has ª if any ª with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Loan No: 0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS    Form 3038 1/01
DRAW.MERS.OR.CVL.DT.8.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)    (page 8 of 14 pages)

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Loan No: 0000353951

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS    Form 3038 1/01
DRAW.MERS.OR.CVL.DT.9.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)    (page 9 of 14 pages)

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which

*Loan No: 0000353951*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.10.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
*(page 10 of 14 pages)*

then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.11.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
(page 11 of 14 pages)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

*Loan No:  0000353951*

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS      Form 3038 1/01
DRAW.MERS.OR.CVL.DT.12.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)      *(page 12 of 14 pages)*

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

THIS SPACE INTENTIONALLY LEFT BLANK

Loan No: 0000353951

OREGON--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.13.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
(page 13 of 14 pages)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
LINTON CECIL LAYNE          -Borrower

_____ (Seal)
NANCY KAY LAYNE          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Loan No: 0000353951

STATE OF OREGON ,   *Multnomah*   County ss:

On this *10* day of *March 2006* , personally appeared *Linton Cecil Layne and Nancy Kay Layne*

and acknowledged the foregoing instrument to be *their* voluntary act and deed.

My Commission Expires: *4/29/07*
(Official Seal)

Before me:

_____
Notary Public for Oregon

OFFICIAL SEAL
WILLIAM G. KLOCK
NOTARY PUBLIC-OREGON
COMMISSION NO. 366707
MY COMMISSION EXPIRES APR. 29, 2007

This Instrument Was Prepared By:

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS
DRAW.MERS.OR.CVL.DT.14.WPF (0101DOCS\DEEDS\CVL\OR_MERS.CVL)

Form 3038 1/01
(page 14 of 14 pages)

Date: **March 08, 2006**                                    File No.:  **7016-707571 ( WGK)**

## EXHIBIT 'A'

**LEGAL DESCRIPTION:**

A portion of Tract 14, AMENDED PLAT OF FAIRVIEW ADDITION TO THE CITY OF HILLSBORO, in the City of Hillsboro, County of Washington and State of Oregon, described as follows:

Beginning at the Northwest corner of Tract 14 and running thence South 0°23' West along the West line of said Tract 14, a distance of 135.1 feet to a point; thence South 85°21' East parallel to E. Main Street, a distance of 70.0 feet, more or less, to an iron rod; thence North 0°23' East 105.0 feet to an iron rod; thence continuing North 0°23' East 30.1 feet to a point in the center of E. Main Street; thence North 85°21' West in the center of E. Main Street, being also the Northerly boundary of said Tract 14, a distance of 70.0 feet, more or less, to the point of beginning.

Initials: _____  _____

Page 1 of 1

# ADJUSTABLE RATE RIDER
(1 Year LIBOR Index - Rate Caps)
(Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this     8th     day of     MARCH     ,
2006     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to
SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION     (the "Lender")
of the same date and covering the property described in the Security Instrument and located at:

2186 EAST MAIN STREET
HILLSBORO, OR 97123
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of     6.375     %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)    Change Dates
The interest rate I will pay may change on the first day of     APRIL 2013     , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S.

*Loan No: 0000353951*

MULTISTATE ADJUSTABLE RATE RIDER-1 Year LIBOR Index (Assumable after IP)-Single Family-Freddie Mac Uniform Instrument
Form 5131  3/04
DRAW.0304.MX.CVL.ARM.RIDER.5131.1.WPF (P:\OPSSHARE\0J0JDOCS\RIDERS\CVL\MXFH5131.ARM)    *(Page 1 of 4)*

dollar-denominated deposits in the London market, as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding *TWO AND ONE QUARTER* percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.375 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than *TWO* percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.375 %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1.    UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by

*Loan No: 0000353951*

MULTISTATE ADJUSTABLE RATE RIDER-1 Year LIBOR Index (Assumable after IP)-Single Family-Freddie Mac Uniform Instrument

Form 5131  3/04

DRAW.0304.MX.CVL.ARM.RIDER.5131.2.WPF (P:\OPSSHARE\0101DOCS\RIDERS\CVL\MXFH5131.ARM)

*(Page 2 of 4)*

Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option. Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.    AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: 0000353951

MULTISTATE ADJUSTABLE RATE RIDER-1 Year LIBOR Index (Assumable after IP)-Single Family-Freddie Mac Uniform Instrument

Form 5131  3/04

DRAW.0304.MX.CVL.ARM.RIDER.5131.3.WPF (P:\OPSSHARE\0101DOCS\RIDERS\CVL\MXFH5131.ARM)

(Page 3 of 4)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
LINTON CECIL LAYNE                    -Borrower

_____ (Seal)
NANCY KAY LAYNE                       -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*[Sign Original Only]*

*Loan No: 0000353951*

MULTISTATE ADJUSTABLE RATE RIDER-1 Year LIBOR Index (Assumable after 1P)-Single Family-Freddie Mac Uniform Instrument

Form 5131  3/04

DRAW.0304.MX.CVL.ARM.RIDER.5131.4.WPF (P:\OPSSHARE\0101DOCS\RIDERS\CVL\MXFH5131.ARM)

*(Page 4 of 4)*

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Property Address:   *2186 EAST MAIN STREET*
*HILLSBORO, OR   97123*

THIS ADDENDUM is made this      *8th*      day of      *MARCH*                  *,   2006*          ,
and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to
*SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION*      (the "Lender")

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Rider are changed
by this Addendum.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
*TWO AND ONE QUARTER*                         percentage points (      *2.250*  %)
to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded
amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment
that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier
of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal
during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest
rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the
Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid
principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal
monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of
my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to
voluntary prepayments.

*Loan No: 0000353951*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
LINTON CECIL LAYNE              -Borrower

_____ (Seal)
NANCY KAY LAYNE              -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

*[Sign Original Only]*

Loan No: 0000353951

INTEREST ONLY ADDENDUM TO ADJUSTABLE RATE RIDER 5/1 LIBOR ARM -- MULTISTATE
DRAW.MX.CVL.ARM.IO.ADNDM.RIDER.2.WPF (0101DOCS\RIDERS\CVL\MXIO_ADN.RID)

01/01
603F
*(page 2 of 2 pages)*



I, Joe Nelson, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____
        N Mejia - Deputy



Washin(  )unty, Oregon    **2010-000831**
01/06/2    ::15:18 PM
D-MA    Crt=1 Btn=22 I REED
$5.00 $5.00 $11.00 $15.00 - Total = $36.00



0144225920100000831001001 7

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
Instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

**Foreclosure Department**
**RECONTRUST COMPANY, N.A.**
**1800 Tapo Canyon Rd., CA6-914-01-94**
**SIMI VALLEY, CA 93063**
TS No. 09 -0184437

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 03/08/2006, executed by LINTON CECIL LAYNE AND NANCY KAY LAYNE, Grantor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON, Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded on 03/15/2006 as Recorder's fee/file/instrument/microfilm/reception number 2006-030001, Records of Washington County, Oregon, describing land. There in: as more fully described in said Deed of Trust.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated **JAN 04 2010** , 20 _____.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of **CALIFORNIA** )

By: _____

) ss

County of **VENTURA** )

**CHRISTINA BALANDRAN**, Assistant Secretary

On **JAN 04 2010** , before me, **JANET L. KOCH** , notary public, personally appeared **CHRISTINA BALANDRAN** *, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

* Assistant Secretary
WITNESS my hand and official seal.

Notary Public in and for the State of **CALIFORNIA**
Residing at **VENTURA**
My Commission Expires: *Oct 29, 2011*
Janet L. koch

```
JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011
```



I, Joe Nelson, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____
N Mejia - Deputy

Page 1 of 1                          *ORASGN (01/08)*





Washi ̄ County, Oregon
01/06,₂ₒₜₒ J2:15:18 PM    **2010-000832**
D-MA      Cnt=1  Stn=22  I REED
$5.00 $5.00 $11.00 $15.00 - Total = $36.00

0144226020100008320010012
I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

AFTER RECORDING RETURN TO:

**Foreclosure Department**
**RECONTRUST COMPANY, N.A.**
**1800 Tapo Canyon Rd., CA6-914-01-94**
**SIMI VALLEY, CA 93063**
TS No. 09 -0184437

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to SIERRA PACIFIC MORTGAGE INC., C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 03/08/2006, executed by LINTON CECIL LAYNE AND NANCY KAY LAYNE, Grantor(s), to FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON, Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded on 03/15/2006 as Recorder's fee/file/instrument/microfilm/reception number 2006-030001, Records of Washington County, Oregon, describing land. There in: as more fully described in said Deed of Trust.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated _____ **JAN 0 4 2010** ___, 20 _____.

BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING LP

State of _____ **CALIFORNIA** _____ )
                                    ) ss
County of _____ **VENTURA** _____ )

By: _____

**CHRISTINA BALANDRAN**, Assistant Secretary

On _____ **JAN 0 4 2010** ___, before me, _____ **JANET L. KOCH** _____, notary public, personally appeared **CHRISTINA BALANDRAN** ✱ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
✱ Assistant Secretary
WITNESS my hand and official seal.

Notary Public in and for the State of **CALIFORNIA**
Residing at _____ **VENTURA** _____
My Commission Expires: _Oct 29, 2011_
Janet L. Koch

**JANET L. KOCH**
Commission # 1778832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011



I, Joe Nelson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify this to be a true
and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____
        N Mejia - Deputy

Page 1 of 1                                ORASGN (01/08)

Washington County, Oregon     **2010-000833**
01/06/2010 02:15:18 PM
D-MST          Cnt=1  Stn=22  I REED
$10.00 $5.00 $11.00 $15.00 - Total = $41.00

01442261201000008330020026

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
Instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk



## APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS, that Linton Cecil Layne And Nancy Kay Layne, as grantor(s), and First American Title Insurance Company Of Oregon, as the Trustee, and Mortgage Electronic Registration Systems, Inc., is the Beneficiary under that certain Trust Deed dated 03/08/2006, and recorded 03/15/2006, as Recorder's fee/file/instrument/microfilm/reception No. 2006-030001 of the Mortgage Records of Washington County, Oregon. The undersigned, who is the present Beneficiary under said Trust Deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints RECONTRUST COMPANY, N.A., whose address is 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063 as successor trustee under said Trust Deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned Beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

DATED: __JAN 0 4 2010__, 2009.

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

By _____

Name: __CHRISTINA BALANDRAN__

Title: Assistant Secretary

STATE OF __CALIFORNIA__ )

) ss.

County of __VENTURA__ )

On __JAN 0 4 2010__, before me, __JANET L. KOCH__ *, personally appeared __CHRISTINA BALANDRAN__ **, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Notary Public
**Assistant Secretary

WITNESS my hand and official seal.

Notary Public for __CALIFORNIA__

My commission expires: __Oct 29, 2011__

Janet L. Koch

(SEAL)

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

APPOINTMENT OF SUCCESSOR TRUSTEE
RE: Trust Deed from
LINTON CECIL LAYNE, NANCY KAY LAYNE and LINTON CECIL & NANCY KAY LAYNE
                    Grantor
          To
RECONTRUST COMPANY, N.A.
          Trustee TS No. 09 -0184437

**After recording return to:**
**RECONTRUST COMPANY, N.A.**
**C/O RECONTRUST COMPANY, N.A.**
**400 COUNTRYWIDE WAY SV-35**
**SIMI VALLEY, CA 93065**

LEX/FIDELITY NATIONAL TITLE CO.    A1-044477



**I, Joe Nelson,** Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____

N Mejia - Deputy



I, **Joe Nelson,** Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____

N Mejia - Deputy



Washingto     ity, Oregon
01/06/201_  _...5:18 PM    **2010-000834**
D-MDES     Cnt=1  Stn=22  I REED
$15.00 $5.00 $11.00 $15.00 - Total = $46.00

014422622010000008340030030
I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA 93065

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by LINTON CECIL LAYNE AND NANCY KAY LAYNE, as grantors, to FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, dated 03/08/2006, recorded 03/15/2006, in the mortgage records of Washington County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 2006-030001, covering the following described real property situated in said county and state, to wit:

PLEASE SEE ATTACHED LEGAL DESCRIPTION.

PROPERTY ADDRESS:  2186 EAST MAIN STREET

HILLSBORO, OR 97123

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $932.39 beginning 11/01/2008; plus late charges of $ 37.40 each month beginning 11/01/2008 payment plus prior accrued late charges of $- 74.80; plus advances of $505.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $140,800.00 with interest thereon at the rate of 6.387 percent per annum beginning 10/01/2008 plus late charges of $ 37.40 each month beginning 11/01/2008 until paid; plus prior accrued late charges of $- 74.80; plus advances of $505.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| NOTICE OF DEFAULT AND ELECTION TO SELL | For Additional Information: |
|---|---|
| RE: Trust Deed from | Please Contact |
| LINTON CECIL LAYNE and NANCY KAY LAYNE, | Foreclosure Department |
| Grantor | RECONTRUST COMPANY, N.A. |
| To | RECONTRUST COMPANY, N.A. |
| RECONTRUST COMPANY, N.A., | 1800 Tapo Canyon Rd., CA6-914-01-94 |
| Trustee          TS No. 09 -0184437 | SIMI VALLEY, CA 93063 |
| | (800)-281-8219 |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

*ORNOD.doc (07/07)*

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Monday, May 17, 2010, at the following place: inside the main lobby of the Washington County Courthouse, 145 N.E. 2nd Avenue, in the city of Hillsboro, County of Washington, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.

Heidi Recinos,  Team Member

STATE OF___**CALIFORNIA**___ )
                                        ) ss.
COUNTY OF___**VENTURA**___ )

On ___**JAN 0 4 2010**___ , before me, ___**JANET L. KOCH**___ , notary public, personally appeared ___Heidi Recinos *Team Member*___, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for ___**CALIFORNIA**___          (SEAL)
My commission expires: *Oct 29, 2011*
Janet L. Koch

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.**

Date: **March 08, 2006**



Fie No.: **7016-707571 ( WGK)**

## EXHIBIT 'A'

**LEGAL DESCRIPTION:**

A portion of Tract 14, AMENDED PLAT OF FAIRVIEW ADDITION TO THE CITY OF HILLSBORO, In the City of Hillsboro, County of Washington and State of Oregon, described as follows:

Beginning at the Northwest corner of Tract 14 and running thence South 0°23' West along the West line of said Tract 14, a distance of 135.1 feet to a point; thence South 85°21' East parallel to E. Main Street, a distance of 70.0 feet, more or less, to an iron rod; thence North 0°23' East 105.0 feet to an iron rod; thence continuing North 0°23' East 30.1 feet to a point in the center of E. Main Street; thence North 85°21' West in the center of E. Main Street, being also the Northerly boundary of said Tract 14, a distance of 70.0 feet, more or less, to the point of beginning.

Initials: _____ _____

Page 1 of 1



**I, Joe Nelson,** Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____

N Mejia - Deputy

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928

| Washington County, Oregon | **2016-041379** |
|---|---|
| D-MA | |
| Stn=29 K GRUNEWALD | **05/31/2016 03:54:03 PM** |
| $10.00 $11.00 $5.00 $20.00 | **$46.00** |

I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of
Assessment and Taxation, Ex-Officio

# CORRECTION  ASSIGNMENT OF DEED OF TRUST
### This instrument is a correction of that certain instrument described below wherein by error, mistake or scrivener's error, the name of the wrong entity was typed as Assignee and this instrument is made to correct said error, mistake, or scrivener's error, and in all other respects confirms and ratifies said former instrument.

Recording Reference of Instrument being corrected:   Instrument Number 2010-000832
Client Id: ShPnt/AOL
Loan #: 0555857475



*FOR VALUE RECEIVED*, BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, ITS SUCCESSORS AND ASSIGNS, whose address is c/o New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, 75 Beattie Place, Ste. 110, MS #001, Greenville, SC 29601, does hereby assign and transfer to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4 whose address is c\o New Penn Financial, LLC d\b\a Shellpoint Mortgage Servicing, 55 Beattie Place, Suite 110, MS#001, Greenville, SC 29601, all its right, title and interest in and to the following described deed of trust executed by LINTON CECIL LAYNE AND NANCY KAY LAYNE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SIERRA PACIFIC MORTGAGE COMPANY, INC., ITS SUCCESSORS AND ASSIGNS for $140,800.00 dated 3/8/2006 of record on 3/15/2006 at Document Number 2006-030001, in the WASHINGTON County Clerk's Office, State of OREGON.

Property Address: 2186 East Main Street, Hillsboro, OREGON 97123

Executed this  5/18/16

BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP BY NEW PENN FINANCIAL, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY IN FACT

By:   CYNTHIA M. BROCK
Title:   MANAGER

# ACKNOWLEDGMENT

STATE OF SOUTH CAROLINA

COUNTY OF Greenville

Before me, the undersigned officer, on this day, personally appeared CYNTHIA M. BROCK the MANAGER of New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing attorney in fact for BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING, LP, ITS SUCCESSORS AND ASSIGNS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this 5|18|16.

Notary Public in and for the State of SOUTH CAROLINA
Notary's Printed Name: Tonya M. Ellis
My Commission Expires: 9/8/2020

DOT for $140,800.00 dated 3/8/2006







**I, Joe Nelson,** Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify this to be a true and correct copy of the original.

Witness my hand this 4th of August, 2025

By: _____

N Mejia - Deputy

# Exhibit D

Affidavit of Authenticity and Judicial Notice filings (State Case No. 23CV23393)

Verified Correct Copy of Original 6/3/2024.

FILED
OREGON JUDICIAL DEPT
WASHINGTON COUNTY

2024 MAY 31 P 2: 31

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF WASHINGTON

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4 | Case No. 23CV23393 |
| | DEFENDANT'S LAYNE'S DECLARATION IN SUPPORT OF MOTION TO DISMISS |
| Plaintiff, | |
| vs. | |
| LINTON CECIL LAYNE; NANCY KAY LAYNE; LILLIE MAE BRUNELL AS TRUSTEE OF BE INCREDIBLE HOLDING TRUST, DATED JANUARY 1, 2012; CITIBANK SOUTH DAKOTA NA; AND ALL OTHER UNKNOWN PARTIES CLAIMING ANY RIGHT, TITLE, LIEN OR INTEREST IN THE REAL PROPERTY COMMONLY KNOWN AS 2186 EAST MAIN STREET, HILLSBORO, OR 97123, | |
| Defendant, | |

### Declaration of Nancy Layne

I, Nancy Layne hereinafter "Affiant" do solemnly swear, and affirm that Affiant is mentally competent and of legal age to state the maters herein, the Affiant has first hand knowledge of the facts stated herein, and the Affiant swears to the facts herein to be true, correct and complete and admissible as evidence in a court of competent jurisdiction, and if called to testify in court would defend the authenticity with Affiants beliefs and first hand knowledge.

DEFENDANT'S LAYNE'S DECLARATION IN SUPPORT OF MOTION TO DISMISS
PAGE 1 OF 4

Verified Correct Copy of Original 6/3/2024.

1. This is Defendant's Layne's Declaration In Support Of Motion To Dismiss, and;

2. THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4 has never communicated with the Defendant or any other party of this action.

3. Plaintiff in their initial pleadings, has failed to substantiate their ownership and or interest in the Deed of Trust and Note as a requirement to ORS 86.713 (1)(b) and (c), ORS 86.713 (3), ORS 86.705 to ORS 86.815, ORS 706.008, and;

4. Plaintiff in their initial pleadings, has failed comply with Oregon Rules of Civil Procedures ORCP 47 (G), ORCP 54 B (1), ORCP 54 B (2) ORCP 21 A, as a requirement to Court Procedures, and;

5. Plaintiff's submission of the "Oregon State Bar Publication *Foreclosing Security Interests*" reference guide, Plaintiff fails to assert any facts ultimately relating anything of substance or merit to possession, ownership, right, title or interest etc. in the Deed of Trust, and;

6. The Deed of Trust names the following parties; Linton Cecil Layne, Nancy Kay Layne, Sierra Pacific Mortgage Company, Inc., First American Title Insurance Company of Oregon, Mortgage Electronic Registration Systems, Inc., MERS, William G. Klock, Notary, no others named, and;

7. Plaintiff failed to provide evidence of a Deed of Trust with a valid Notary Signature a violation of 194.565 Certificate of notarial acts, and;

Verified Correct Copy of Original 6/3/2024.

8. Plaintiff has submitted uncertified copies of documents that fail to comply with ORS 40.135(1) (n), (o), (p), (z), under presumptions of evidence, and

9. Plaintiff could or should have filed assignment(s) connecting their interest/ownership to the Deed of Trust, yet failed to, creating the presumption of ORS 40.135(1) (c), prior to the close of the trust per the Pooling and Servicing Agreement, and;

10. Plaintiff, by their Attorney, Amber L. Labrecque has sworn and scribed in the COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST filed in Washington County Oregon Court on June 12, 2023 in their pleadings that the Plaintiff knew, should have known or had the compelling mandatory duty to know based upon their profession has she perjured herself by submitting the following facts to this court, of the beneficiary of the Oregon Foreclosure Avoidance Program in 2017 and 2023 were different, and as stated per the Fidelity National Title Snapshot of subject property was the beneficiary as of 2016 was THE BANK OF NEW YORK MELLON & THE BANK OF NEW YORK & THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-HYB4, MORTGAGE PASS where Shellpoint Mortgage Servicing was the only party attempting to collect a alleged debt, even though this should not have happened after the closing of the 2006-HYB4 Trust.

This matter is not made for the purpose of delay, it is made in the interest of justice and will not prejudice any party.

I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand it is made for use as evidence in Court and is subject to penalty for perjury.

DEFENDANT'S LAYNE'S DECLARATION IN SUPPORT OF MOTION TO DISMISS
PAGE 3 OF 4

Verified Correct Copy of Original 6/3/2024.

State of Oregon - County cos
Signed and _ACKNO_____osed_ before me
on the _30_ day of _MAY_, 20_24_
by _NANCY_ _LAYNE_
Name: _Ronald James Baker_
Notary public
Signature: _____
Expires on: _23 OCT 27_

OFFICIAL STAMP
RONALD JAMES BAKER
NOTARY PUBLIC - OREGON
COMMISSION NO. 1041898
MY COMMISSION EXPIRES OCTOBER 23, 2027

DATED: this _30_ day of May 2024

By: _____
Nancy Kay Layne, *Sui juris*

_____
Oregon Notary

My commission expires _23 oct 27_

"Do not withhold good from those to whom it is due, when it is in your power to act."

Proverbs 3:27

DEFENDANT'S LAYNE'S DECLARATION IN SUPPORT OF MOTION TO DISMISS
PAGE 4 OF 4

Verified Correct Copy of Original 7/17/2025.

# IN THE CIRCUIT COURT OF THE STATE OF OREGON

## FOR THE COUNTY OF WASHINGTON

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4

Plaintiff, Counter Defendant

vs.

LINTON CECIL LAYNE; NANCY KAY LAYNE; LILLIE MAE BRUNELL AS TRUSTEE OF BE INCREDIBLE HOLDING TRUST, DATED JANUARY 1, 2012; CITIBANK SOUTH DAKOTA NA; AND ALL OTHER UNKNOWN PARTIES CLAIMING ANY RIGHT, TITLE, LIEN OR INTEREST IN THE REAL PROPERTY COMMONLY KNOWN AS 2186 EAST MAIN STREET, HILLSBORO, OR 97123,

Defendant(s), Counter-Plaintiffs

Case No. 23CV23393

**AFFIDAVIT OF FACT IN SUPPORT OF DEFENDANT'S NOTICE AND DECLARATION OF VOID JUDGMENT AND ALL ORDERS AS A MATTER OF LAW**

**AFFIDAVIT OF FACT IN SUPPORT OF DEFENDANT'S NOTICE AND DECLARATION OF VOID JUDGMENT AND ALL ORDERS AS A MATTER OF LAW**

| STATE OF OREGON | ) |
| County of Coos | ) ss. |
| | ) |

I Nancy Kay Layne, the Affiant herein, do hereby swear under oath and penalty of perjury that the following delineated facts are true to the best of my knowledge and belief.

1. I am a named Defendant in this action and therefore, I have the full right to defend myself and property in this case. I am named as a party of interest the subject property as described in the Deed of Trust filed in Washington County Oregon under

document number 2006-030001 and recorded on 03/15/2006, an no further evidence exists to the contrary.

2.    The Plaintiff has never proven their legal existence and capacity to sue even when challenged by Defendant to do so and the Court has NOT required them to prove this genuine issue of material fact and procedural requirement in order to show capacity and right to bring suit in the State of Oregon.

3.    The Plaintiff has never proven their standing on the record in this case as they have failed to produce an genuine original of the subject Note with evidence thereupon that shows that the exact named Plaintiff is the Holder in Due Course of the purported negotiable instrument (the subject Note).

4.    The Court has failed in it's duty to require the Plaintiff to prove both it's legal capacity and standing to bring suit in this case. Absent proof on the record by the Plaintiff of their alleged injury stated in their Complaint in the form of a sworn Affidavit by one of It's corporate Officers and under oath and penalty of perjury; then the Plaintiff has not proven any injury caused by the Defendants and in fact has no matter in controversy that constitutes a judiciable matter before this Court. Therefore, this Court is without jurisdiction.

5.    The Plaintiff lacks standing to foreclose a trust deed under the Oregon Trust Deed Act, ORS 86.713(1)(b) and (c), and no further evidence exists to the contrary.

6.    Defendant claims in the Deed of Trust filed in Washington County Oregon under document number 2006-030001 and recorded on 03/15/2006, that "Borrowers warrants and will defend generally the title to the property against all claims and demands"

7.    Defendant, participated in the Oregon Foreclosure Avoidance Program (herein after OFAP) in 2017, where appears the "Beneficiary/Servicer" as Shellpoint Mortgage Servicing.

8. Defendant, was delivered in 11/13/2017 a Certificate of Compliance from the OFAP program where appears the Beneficiary is BAC BANK OF NY (CWMBS 2006-HYB4).

9. Defendant, participated in the OFAP in 2022, where appears the "Beneficiary/Servicer" as Shellpoint Mortgage Servicing.

10. Defendant, was delivered in 04/11/2023 a Certificate of Compliance from the OFAP program where appears the Beneficiary is THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4.

11. Defendant, based on knowledge and belief states that there is no evidence in the Washington County recorder's office that any Assignment to change from the Beneficiary is BAC BANK OF NY (CWMBS 2006-HYB4) to the Beneficiary is THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4 exists.

12. Based on knowledge and belief, Shellpoint Mortgage Servicing has not verified nor authenticated their agency relationship to a verifiable third-party principal.

13. Based on knowledge and belief, Shellpoint Mortgage Servicing has caused to be served misleading representation of their agency relationship with any other party.

14. Based on knowledge and belief, defendant Shellpoint Mortgage Servicing has caused to be served misleading representations about the character, amount, and legal status of principal, interest and subsequent fees.

AFFIDAVIT OF FACT IN SUPPORT OF DEFENDANT'S NOTICE AND DECLARATION OF VOID JUDGMENT AND ALL ORDERS AS A MATTER OF LAW                    PAGE 3 OF 4

Verified Correct Copy of Original 7/17/2025.

Verified Correct Copy of Original 7/17/2025.

15.   Based on knowledge and belief, Shellpoint Mortgage Servicing has caused to be served demands that are threatening and unverified.

16.   Based on knowledge and belief, Defendant THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWMBS INC., CHL MORTGAGE PASSTHROUGH TRUST 2006-HYB4, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-HYB4 has caused to be served demands that are threatening and unverified.

FURTHER AFFIANT SAYETH NAUGHT.

STATE OF OREGON    )
                   ) ss.
   County of Coos   )

_____
Nancy Kay Layne,

Defendant, Counter-Plaintiffs

Subscribed and sworn to before me, _27_ day of _JUNE_____, 2025

_____
NOTARY PUBLIC

My commission expires: _27 OCT_, 20_27_.



OFFICIAL STAMP
RONALD JAMES BAKER
NOTARY PUBLIC - OREGON
COMMISSION NO. 1041898
MY COMMISSION EXPIRES OCTOBER 23, 2027

AFFIDAVIT OF FACT IN SUPPORT OF DEFENDANT'S NOTICE AND DECLARATION OF VOID JUDGMENT AND ALL ORDERS AS A MATTER OF LAW    PAGE 4 OF 4

# Exhibit E

Pooling and Servicing Agreement excerpts for CWMBS Inc., CHL Mortgage Pass-Through Trust 2006-HYB4

of determination, the aggregate of the Certificate Balances of all Certificates of such Class as of such date.

Class Interest Shortfall: As to any Distribution Date and Class or P&I Component, the amount by which the amount described in clause (i) of the definition of Class Optimal Interest Distribution Amount for such Class or P&I Component exceeds the amount of interest actually distributed on such Class or P&I Component on such Distribution Date pursuant to such clause (i).

14

<PAGE>

Class Optimal Interest Distribution Amount: With respect to any Distribution Date and interest-bearing Class or any interest-bearing P&I Component, the sum of (i) one month's interest accrued during the related Interest Accrual Period at the Pass-Through Rate for such Class or P&I Component on the related Class Certificate Balance, Notional Amount or Component Principal Balance, as applicable, as of the last day of the related Interest Accrual Period, subject to reduction as provided in Section 4.02(d) and (ii) any Class Unpaid Interest Amounts for such Class or P&I Component.

Class Subordination Percentage: With respect to any Distribution Date and each Class of Subordinated Certificates, the quotient (expressed as a percentage) of (a) the Class Certificate Balance of such Class of Certificates immediately prior to such Distribution Date divided by (b) the aggregate of the Class Certificate Balances of all Classes of Certificates immediately prior to such Distribution Date.

Class Unpaid Interest Amounts: As to any Distribution Date and Class or P&I Component of interest-bearing Certificates, the amount by which the aggregate Class Interest Shortfalls for such Class or P&I Component on prior Distribution Dates exceeds the amount distributed on such Class or P&I Component on prior Distribution Dates pursuant to clause (ii) of the definition of Class Optimal Interest Distribution Amount.

Closing Date: May 30, 2006.

Code: The Internal Revenue Code of 1986, including any successor or amendatory provisions.

COFI: The Monthly Weighted Average Cost of Funds Index for the Eleventh District Savings Institutions published by the Federal Home Loan Bank of San Francisco.

COFI Certificates: As specified in the Preliminary Statement.

Commission: The U.S. Securities and Exchange Commission.

Compensating Interest: As to any Distribution Date and Loan Group, an amount equal to one-half of the Master Servicing Fee for the related Loan Group for such Distribution Date.

Component: As specified in the Preliminary Statement.

Component Notional Amount: With respect to the Class 1-A-1 IO, Class 1-A-2 IO, Class 2-A-1 IO, Class 2-A-2 IO, Class 3-A IO and Class 3-B IO Components and any date (i) prior to and including the last day of the Interest Accrual Period for the related Weighted Average Roll Date, the Class Certificate Balances of the Class 1-A-1, Class 1-A-2, Class 2-A-1, Class

# Exhibit F

Email from BNY Mellon 'MBS Property Inquiries' (Nov. 26, 2024) confirming
BNY acts only as trustee and does not own the loan or property

**mail.com**

# RE: Request details of MBS

| | |
|---|---|
| **From:** | "MBS Property Inquiries" <mbs.property.inquiries@bnymellon.com> |
| **To:** | "NK Layne" <nklayne@mail.com> |
| **Date:** | Nov 26, 2024 8:19:55 AM |

Thank you for your recent correspondence.

As per our records, you will need to contact the servicer for the address(es) listed in your email.  The servicer info is as follows:

Servicer:  Bank of America N.A., Master Servicer

Phone #:  Existing Mortgages/ REO:  800.669.6607 (For callers interested in purchasing an available Bank of America owned property, please refer to BOA's  website at https://realestatecenter.bankofamerica.com)

 Existing Home Equity Lines of Credit & Loans:  800.934.5626

BNY is acting as a Trustee, and therefore we do not own the loan or the property.  As trustee, BNY is not involved in the servicing of the loans or the foreclosure process. .  This is the responsibility of the Servicer.  The servicer is the direct and only contact who would have the information you are seeking.

Thank you for contacting BNY.

**BNY Property Inquiries**
Global Corporate Trust - Mortgage Backed Securities

Phone +1 800.269.6776

**From:** NK Layne <nklayne@mail.com>
**Sent:** Tuesday, November 26, 2024 9:19 AM
**To:** MBS Property Inquiries <mbs.property.inquiries@bnymellon.com>

**Subject:** Request details MBS

Property address:

2186 E Main

Hillsboro  Oregon. 97123

**Notice: We've simplified our company umbrella brand to BNY. While we're making updates to our channels to reflect this change, you may still see emails from bnymellon.com. For more information on our brand evolution please read about it in our Newsroom.**

*Notice: The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying, or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient, please return the e-mail to the sender and delete it from your computer. Emails may be interfered with and may contain viruses or other defects. We provide no warranties in relation to these matters. For information on how to help protect yourself from fraud, including cyberfraud and other fraudulent activity, please visit our **Information Security and Protection Page.** Please refer to https://www.bny.com/corporate/emea/en/disclaimers/eu-disclosures.html for certain disclosures relating to European legal entities. Please note that we may use tracking pixels to monitor your interaction with reports and data delivered via this email. To learn how BNY Mellon uses personal information, please read our **Data Privacy Notice.***

# Exhibit G

Sierra Pacific Mortgage Letter (April 14, 2006) transferring servicing to Countrywide Home Loans, Inc., with no recorded assignment into or out of Countrywide in county land records, evidencing a fatal gap in the chain of title.

## Sierra Pacific Mortgage

**Loan Servicing Department**
**1180 Iron Point Road, Suite 200**
**Folsom, CA 95630**
**Phone: (888) 560-2280**

Linton Cecil Layne
Nancy Kay Layne
2186 East Main Street
Hillsboro Or 97123,

April 14, 2006

Re: Loan No.:        SPM353951
Payment Amount:  $ 887.65

### NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Dear Customer:

The servicing of your mortgage loan, that is, the right to collect payments from you, is being transferred to Countrywide Home Loans, Inc., effective **5/1/2006**. **Any outstanding payments that are due prior to this date should be sent to Sierra Pacific Mortgage.** The assignment, sale or transfer of the servicing of your mortgage loan does not affect the term or conditions of the mortgage instruments, other than the terms directly related to the servicing of your loan.

You should receive a payment coupon or billing statement shortly from Countrywide Home Loans, Inc.. Any payments that you make prior to receiving the payment coupon or billing statement should include property address or Social Security Number and be mailed to:

| Payments due prior to   5/1/2006 | Payments due on or after   5/1/2006 |
|---|---|
| **Sierra Pacific Mortgage**<br>**Loan Servicing Department**<br>**1180 Iron Point Road, Suite 200**<br>**Folsom, CA 95630** | **Countrywide Home Loans, Inc.**<br>**Customer Service**<br>**PO Box 10219**<br>**Van Nuys, CA 91410-0219** |
| **Loan No.:  SPM353951** | **Loan No.:  118728911** |

Any payments received by Sierra Pacific Mortgage that are due to Countrywide Home Loans, Inc. will be forwarded immediately, for up to 60 days after the transfer effective date.

Except in limited circumstances, the law requires that Sierra Pacific Mortgage send you notification at least 15 days before the effective date of this transfer. Your new servicer must also send you notification no later than 15 days after the transfer effective date shown above.

During the 60 day period following the effective date of the transfer of servicing, a loan payment received by Sierra Pacific Mortgage on or before its due date, may not be considered as late by the new servicer and a late charge may not be charged.

For future assistance, please contact our office at **(888) 560-2280** or **Countrywide Home Loans, Inc.** at **(800) 669-6607 between 8AM to 5PM Monday to Friday.**

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A

gbfrstmort2p

## Sierra Pacific Mortgage

**Loan Servicing Department**
**1180 Iron Point Road, Suite 200**
**Folsom, CA 95630**
**Phone: (888) 560-2280**

"qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

**Countrywide Home Loans, Inc.**
**Customer Service**
**PO Box 10219**
**Van Nuys, CA 91410-0219**

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Sincerely
Sierra Pacific Mortgage

gbfrstmort2p

# Exhibit H

Deposition Testimony of Michele Sjolander, former Countrywide executive, admitting widespread robo-signing and surrogate signers, confirming unreliability of foreclosure documents..

http://www.icelegal.com/files/Transcript_Michele_Sjolander_Depo_3-14-12_Redacted.pdf

IN THE CIRCUIT COURT FOR THE 11TH JUDICIAL CIRCUIT

IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION


COUNTRYWIDE HOME LOANS
SERVICING, L.P.,

            Plaintiff,

      vs.                          Case No.: 09-21198CA09

▓▓▓▓▓▓▓▓▓▓▓ et al.,

            Defendants.

_____


DEPOSITION OF

MICHELE SJOLANDER

Wednesday, March 14, 2012

10:07 a.m.


4500 Park Granada

Calabasas, California


REPORTED BY:

Julee Sokol

CSR No. 11319

48

sign something for them to model the stamp after?

A    Yes.

Q    Okay.  Did you do that one time or have you done it several times?

A    Many, many times.

Q    And why change the stamp?

A    My title has changed.  The entities have changed.  The old stamps got old.  Were peeling back.  Variety of reasons.

Q    And do you know how many stamps were issued with your name on them?

A    Not the exact number.  But many.

Q    Could you estimate?  Is it more than 10?  More than 100?

A    More than -- more than 10.

Q    Less than 50?

A    I don't -- through the whole years, I can't even give that answer.

Q    Okay.  And what happens to the stamps?  What happens to the old stamps when you execute new stamps?

A    I collect them and burn them.

Q    Okay.  You physically collect them?

A    Yes.  Well, I don't physically go -- they -- they -- they give them -- the bank gives them back to me and I destroy them.

64

Q    When the endorsements are created, is there any documentation that's done simultaneously to document who put on these endorsements or when they were done?

MR. TRINZ:  Objection as to form.

THE WITNESS:  As I said, this is not in the scope of my department.

Q    BY MS. LUNDERGAN:  Okay.  But is it in the scope of your knowledge?

A    No.  I don't know.

Q    So you have no idea if the people who are using your stamps, do they make a note of when they used it and then in what circumstance?

A    Correct.

Q    Do you know why you don't personally stamp documents?

A    It was not common business practice.  The common business practice is that the note is most secure with the custodian, and that the stamp would be applied at the custodian in the vault.

It would not -- the note would not be secure if it was sent to my office for me to endorse it.  It's all about the security of the note.

Q    Okay.  And it's always been done that way since you've been involved in 2008?

A    Yes.

Appeared in original complaint June 2010

PAY TO THE ORDER OF
**Countrywide Bank, N.A.**

WITHOUT RECOURSE
Home Loan Center Inc. DBA Lendingtree Loans

BY: _____
Diane Dalley
ASST. SECRETARY

The stamps below were backdated so plaintiff could remain the plaintiff. The home was finally stolen by a non party after showing the court that decided standing need not be established to foreclose.

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC
BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB
FKA COUNTRYWIDE BANK, N.A.
BY: _____
LAURIE MEDER
SENIOR VICE PRESIDENT

Both Sjolander and Meder Stamps Appeared 1 year later in June 2011 Countrywide FSB Did not exist after 2010 stamp at top

The Sjolander and Meder stamps often came together; usually undated, unsigned and after the Lis Pendens was filed. Here are some of the representations.

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS, INC

WITHOUT RECOURSE

COUNTRYWIDE BANK, FSB

BY _Laurie Meder_

LAURIE MEDER

SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE

COUNTRYWIDE HOME LOANS, INC

BY _Michele Sjolander_

MICHELE SJOLANDER

EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF _____ (Seal)

-Borrower

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_ _____ (Seal)

-Borrower

MICHELE SJOLANDER

SENIOR VICE PRESIDENT

# Exhibit I

Plaintiff's August 1, 2025 Motion to Vacate Judgment filed in Washington County Circuit Court, raising statute of limitations, lack of standing, and absence of original note.

Verified Correct Copy of Original 8/1/2025.

FILED
OREGON JUDICIAL DEPT
WASHINGTON COUNTY

· 2025 AUG -1  P 3: 43·

IN THE CIRCUIT COURT IN THE STATE OF OREGON

FOR THE COUNTY OF WASHINGTON

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
THE CWMBS INC., CHL MORTGAGE
PASSTHROUGH TRUST 2006-HYB4,
MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-HYB4

Plaintiff, Counter Defendant

vs.

LINTON CECIL LAYNE; NANCY KAY
LAYNE; LILLIE MAE BRUNELL AS
TRUSTEE OF BE INCREDIBLE HOLDING
TRUST, DATED JANUARY 1, 2012;
CITIBANK SOUTH DAKOTA NA; AND
ALL OTHER UNKNOWN PARTIES
CLAIMING ANY RIGHT, TITLE, LIEN OR
INTEREST IN THE REAL PROPERTY
COMMONLY KNOWN AS 2186 EAST
MAIN STREET, HILLSBORO, OR 97123,

Defendant(s), Counter-Plaintiffs

Case No.: 23 CV 23393

**DEFENDANT LAYNE'S MOTION TO**

**VACATE JUDGMENT**

COMES NOW Defendant, Nancy Kay Layne, pro se, and respectfully moves this Court to vacate the General Judgment entered on July 17, 2025, pursuant to ORCP 71(B)(1)(c) and ORCP 71(C). The judgment is void or voidable for the following reasons:

1.      Plaintiff failed to initiate the action within the six-year limitations period under ORS 12.080(1) following acceleration of the note on June 8, 2015.

23CV23393
MOSJ
Motion — Set Aside Judgment
1 19365572

Page 1 of 3

Verified Correct Copy of Original 8/1/2025.

2. Plaintiff has not established standing and relied upon redacted and unauthenticated documents.

3. Plaintiff never submitted any affidavit or sworn declaration in support of its claims or to authenticate its exhibits.

4. The original complaint was unverified, in violation of evidentiary standards.

5. Pursuant to ORCP 17 C, sanctions are warranted for filing unsupported and misleading pleadings.

6. The court entered judgment without evidence competent to establish Plaintiff's legal capacity or chain of title.

7. Plaintiff failed to produce or tender the original promissory note as required under UTCR 2.060. That rule mandates that in all cases where judgment is based on a negotiable instrument, the party must present the original instrument to the court before judgment is entered. The court must also enter a notation on the face of the original note. There is no record in this proceeding of any such original note being tendered, nor any finding of loss or destruction pursuant to ORS 73.0309. Absent this production, the judgment is procedurally improper and void under Oregon law.

8. Plaintiff lacked standing at the inception of the case, as required by Oregon law. See Yancy v. Shatzer, 337 Or 345 (2004); Tucker v. State Farm, 315 Or 143 (1993); Deutsche Bank Nat'l Tr. Co. v. Abel, 262 Or App 473 (2014); U.S. Bank Nat'l Ass'n v. McCoy, 308 Or App 628 (2021). Standing is jurisdictional and must be proven at the outset.

9. See also Defendant's November 1, 2024 Declaration and Memorandum of Law, previously filed in this matter and submitted herewith as Exhibit G, which outlines further factual and legal grounds rendering the judgment void or voidable.

Verified Correct Copy of Original 8/1/2025.

Accordingly, Defendant respectfully requests that the Court vacate the General Judgment, dismiss the foreclosure action with prejudice, and issue an order cancelling and expunging all documents recorded in reliance upon the judgment.

DATED: 31 July 2025
Respectfully submitted,
*/s/Nancy Kay Layne, pro se*
Nancy Kay Layne, pro se
2670 Broadway Ave # b 191
North Bend. OR. 97459
541-435-0054

# Exhibit J

Plaintiff's August 1, 2025 Memorandum of Law and Request for Mandatory Judicial Notice filed in Washington County Circuit Court, citing ORS 12.080, UTCR 2.060, ORS 73.0309, and controlling precedent (Abel and McCoy).

Verified Correct Copy of Original 8/1/2025

IN THE CIRCUIT COURT IN THE STATE OF OREGON

FOR THE COUNTY OF WASHINGTON

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
THE CWMBS INC., CHL MORTGAGE
PASSTHROUGH TRUST 2006-HYB4,
MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-HYB4

              Plaintiff, Counter Defendant

vs.

LINTON CECIL LAYNE; NANCY KAY
LAYNE; LILLIE MAE BRUNELL AS
TRUSTEE OF BE INCREDIBLE HOLDING
TRUST, DATED JANUARY 1, 2012;
CITIBANK SOUTH DAKOTA NA; AND
ALL OTHER UNKNOWN PARTIES
CLAIMING ANY RIGHT, TITLE, LIEN OR
INTEREST IN THE REAL PROPERTY
COMMONLY KNOWN AS 2186 EAST
MAIN STREET, HILLSBORO, OR 97123,

Defendant(s), Counter-Plaintiffs

Case No.: 23 CV 23393

DEFENDANT LAYNE'S REQUEST FOR

MANDATORY JUDICIAL NOTICE

(ORS 12.080(1), UTCR 2.060 and ORS

73.0309)

TO THE HONORABLE COURT:

Pursuant to Oregon Evidence Code Rule 201(d), Defendant respectfully requests that the Court

take MANDATORY JUDICIAL NOTICE of the following rules and statutes, which are not

subject to reasonable dispute and are either (1) generally known within this jurisdiction or (2)

capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned:

1. That Plaintiff issued a Notice of Default and Intent to Accelerate on June 8, 2015.

2. That the complaint initiating this action was filed on June 12, 2023.

3. That ORS 12.080(1) provides a six-year statute of limitations for actions based on contract.

4. That more than six years elapsed between acceleration and the filing of this foreclosure action.

5. That in Deutsche Bank Nat'l Tr. Co. v. Abel, 262 Or App 473 (2014), This case held that an action to foreclose a mortgage loan is subject to the six-year statute of limitations under ORS 12.080(1), and that the limitations period begins to run upon the lender's acceleration of the loan. Accordingly, a foreclosure action filed more than six years after acceleration is time-barred. The case is binding precedent and directly applicable to the time-bar argument raised in Defendant's Motion to Vacate.

6. That in U.S. Bank Nat'l Ass'n v. McCoy, 308 Or App 628 (2021), the Oregon Court of Appeals reaffirmed this principle, reversing a foreclosure judgment filed beyond the statute of limitations period.

7. **UTCR 2.060**: Requires that any judgment based on a negotiable instrument must be supported by tender of the original instrument to the Court. The Court must enter a notation of judgment on the face of the original instrument.

8. **ORS 73.0309**: Governs enforcement of lost, destroyed, or stolen negotiable instruments and requires a sworn affidavit establishing possession, terms, and facts preventing production, before judgment can be rendered.

That Plaintiff submitted redacted public documents into the record, concealing material facts essential to standing and authentication and has failed to comply with the requirements. No original promissory note was produced at any stage of the proceeding. No affidavit of lost note

Page 2 of 3

Verified Correct Copy of Original 8/1/2025

under ORS 73.0309 has been submitted. As a result, entry of judgment was improper and violated procedural rules.

DATED: 31 July 2025
Respectfully submitted,
*/s/Nancy Kay Layne, pro se*
Nancy Kay Layne, pro se
2670 Broadway Ave # b 191
North Bend. OR. 97459
541-435-0054

Verified Correct Copy of Original 8/1/2025.

# Exhibit K

State Court's Order Denying Plaintiff's Motions, despite Defendants' lack of standing, expired statute of limitations, and failure to produce the original note, evidencing deprivation of due process.

Verified Correct Copy of Original 8/1/2025.

8/18/2025 1:15:41 PM

# DENIED!



Circuit Court Judge, Andrew Erwin

## IN THE CIRCUIT COURT IN THE STATE OF OREGON

## FOR THE COUNTY OF WASHINGTON

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
THE CWMBS INC., CHL MORTGAGE
PASSTHROUGH TRUST 2006-HYB4,
MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-HYB4

    Plaintiff, Counter Defendant

vs.

LINTON CECIL LAYNE; NANCY KAY
LAYNE; LILLIE MAE BRUNELL AS
TRUSTEE OF BE INCREDIBLE HOLDING
TRUST, DATED JANUARY 1, 2012;
CITIBANK SOUTH DAKOTA NA; AND
ALL OTHER UNKNOWN PARTIES
CLAIMING ANY RIGHT, TITLE, LIEN OR
INTEREST IN THE REAL PROPERTY
COMMONLY KNOWN AS 2186 EAST
MAIN STREET, HILLSBORO, OR 97123,

Defendant(s), Counter-Plaintiffs

Case No.: 23 CV 23393

DEFENDANT LAYNE'S [PROPOSED]

ORDER GRANTING MOTION TO

VACATE JUDGMENT

Based upon the Motion to Vacate Judgment filed by Defendant Nancy Kay Layne, and good cause appearing, the Court finds:

1. That Plaintiff accelerated the loan on or about June 8, 2015, but did not file this action until June 12, 2023, beyond the six-year statute of limitations in ORS 12.080(1);

2. That Plaintiff has failed to demonstrate standing based on redacted and legally insufficient evidence;

23CV23393
PPOR
Order — Proposed
19365580

Page 1 of 3

3. That Plaintiff submitted redacted public documents which concealed material facts necessary to evaluate standing and chain of title;

4. That Plaintiff failed to tender the original promissory note as required by UTCR 2.060 and failed to submit a sworn affidavit as required by ORS 73.0309 to justify enforcement of a lost or destroyed negotiable instrument. The judgment was therefore entered in violation of procedural requirements governing negotiable instruments;

THEREFORE, IT IS HEREBY ORDERED that the General Judgment entered on July 17, 2025, is VACATED.

IT IS FURTHER ORDERED that the foreclosure complaint is DISMISSED WITH PREJUDICE as time-barred and unsupported by admissible evidence.

IT IS FURTHER ORDERED that any recorded substitute trustee appointments, lis pendens, or assignments filed by Plaintiff or on Plaintiff's behalf in connection with this foreclosure action are hereby declared void and shall be expunged from the property record.

This Court further acknowledges the Defendant's previously filed "Notice and Declaration of Void Judgment in All Orders as a Matter of Law," filed on or about November 1, 2024, which provided unrebutted evidence that supports the determination that the judgment is void. No objection or rebuttal was submitted by Plaintiff within the time allowed under applicable court rules, and the Plaintiff is deemed to have admitted the truth of the affidavit and declaration as filed.

Page 2 of 3

Verified Correct Copy of Original 8/1/2025.

IT IS SO ORDERED.

DATED this ___ day of _____, 2025.

_____

Circuit Court Judge

# IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**Nancy Kay Layne,**
Plaintiff,

v.

**ZBS LAW, LLC;  et al**
Defendants.

FILED04 SEP '25 16:33USDC-ORP

Case No. _____

## CERTIFICATE OF SERVICE

I, _3:25-cv-1584-SI_ , certify that on _____, 2025, I served a true and correct copy of the **Complaint, Affidavit of Truth, Memorandum of Law, Table of Authorities, and Table of Exhibits, Exhibits, and Order** by depositing copies in the United States Mail, Priority Mail postage prepaid, addressed as follows:

**ZBS Law, LLC:**
ZBS Law, LLC
5 Centerpointe Dr., Suite 400
Lake Oswego, OR 97035

**Klinedinst PC:**
Klinedinst PC
1325 Fourth Avenue, Suite 1335
Seattle, WA 98101

**Counsel for Defendant The Bank of New York Mellon (Trustee):**
Gregor A. Hensrude, OSB #213004
Klinedinst PC
1325 Fourth Avenue, Suite 1335
Seattle, WA 98101

**Registered Agent for Defendant Shellpoint Mortgage Servicing:**
Registered Agents Inc.
6650 Rivers Ave., Suite 100
Charleston, SC 29406

_____

Signature

**CERTIFICATE OF SERVICE**                                                    **Page 1 of 1**